## STATE v. HUEGEL.
No. 73-87.
Circuit Court, Okeechobee County, Criminal Appeal.
October 21, 1974.

Elizabeth duFresne of Tobias Simon and Elizabeth duFresne, Miami, for the appellant.

Anthony T. Young, Assistant State Attorney, Okeechobee, for the appellee.

JAMES E. ALDERMAN, Circuit Judge.

*Opinion on appeal:* An information filed in the county court of Okeechobee County charged that Gerald M. Huegel, on April 6, 1973, did "willfully refuse to depart from the campus of the Florida School for Boys at Okeechobee after having been warned to depart therefrom by George Brown, superintendent of said school, in violation of §821.01(2) Florida Statutes." Mr. Huegel pled "not guilty",

a trial was held, the jury returned a verdict of "guilty", the defendant was adjudged guilty and sentenced to ten days in the county jail, plus a $200 fine or an additional twenty days in the county jail if the fine was not paid. A timely appeal was filed and the case is now before the circuit court for appellate review.

Two points are raised by the defendant in this appeal. First, that the Florida Trespass Statute, §821.01, was improperly applied in a manner calculated to thwart the exercise of his constitutionally guaranteed rights. The second point is that there was not sufficient evidence to support the verdict rendered by the jury in that there was no proof of the essential elements of willfulness on the defendant's part and lack of consent on the state's part.

There is very little factual dispute as to what happened. Considering the evidence and testimony in the light most favorable to the state's case, the following facts are established.

The defendant had been an employee at the Boy's School up until June 30, 1972. He resigned from that position and had gone with a labor organization known as the American Federation of Teachers, first as state president and then as state director of legislative activities.

On March 9, 1973, the governor of Florida issued a memorandum directed to all agency heads concerning collective bargaining by state employees. The governor, in his memorandum, after referring to previous executive orders, stated as follows —

> "My executive orders have been occasionally misinterpreted by both state agencies and labor organizations. The orders do not prohibit organizational activities by state employees on state property. Consistent with the spirit of the decision by the Supreme Court, I believe both employees and non-employees are entitled to reasonable access to state property to solicit memberships in a labor organization, provided the solicitation takes place during non-working time in non-working areas and does not otherwise interfere with the work routine of the agency."

On April 2, 1973, the defendant, as representative of the American Federation of Teachers, visited the Boy's School. He had lunch in the staff cafeteria with friends and acquaintances at the school and while there showed a copy of the governor's memorandum to Mr. Brown, the superintendent of the school. The defendant wanted to make arrangements to meet with employees of the Boy's School for the purpose of organizing and recruiting union membership. This was the first knowledge Mr. Brown had of the governors' memorandum, he had received no instructions or

information from his superiors in Tallahassee. Mr. Brown asked for additional time to allow him to communicate with Tallahassee. Both men agreed to meet the following Friday, April 6th, to discuss the matter further. Mr. Brown talked by phone with Jack Blanton, chief of the Bureau of Training Schools, but received no clear instructions as to what he was to do. He was told —

> "You are hired to run the training school, you are the superintendent and you are in charge of the care, custody and control and welfare of the delinquents committed there by the courts. You will maintain control of the campus and be in charge of who comes and goes. If the union representatives want to deal with you, you will follow the executive order that we have been working under."

He was also told by Mr. Blanton that the governor's memorandum had not been passed on to him because the people in Tallahassee had questions about the meaning of the memorandum, that they did not agree with it and based on the wording of the memorandum, they felt they should clear this before passing it on down.

The defendant returned to the school on April 6th and met with Mr. Brown in his office. He showed Mr. Brown a copy of an additional memorandum which had been issued on March 21, 1973, by Emmett S. Roberts, secretary of the Department of Health and Rehabilitative Services of the state of Florida. Secretary Roberts, in his memorandum, after referring to the governor's memorandum of March 9, 1973, stated —

> "I concur with the governor's policy on this subject. Employees and non-employees may use cafeterias, employee lounges, and other non-work areas where employees gather for union organizational activity during non-working hours (work breaks and lunch period). Bulletin boards and other employee areas where posting is allowed may be used for notification of union meetings, handbills, flyers, newsletters, etc."

The defendant requested permission to go to the staff cafeteria at lunch time to meet with the employees of the Boy's School. He was told by Mr. Brown that without guidelines this would not be wise. The meeting in Mr. Brown's office was terminated and the defendant left the campus. This was around 11 a.m. About 11:30 a.m., the defendant called Mr. Brown on the phone to advise him that he was coming back to the campus and that he intended to go to the cafeteria. Mr. Brown then called Tallahassee for instructions and was advised to take "what action you think is appropriate." Mr. Brown testified that he felt at that time that it would be appropriate not to allow the defendant in the cafeteria.

About 12 noon, the defendant arrived and Mr. Brown met him outside the cafeteria. There was a polite exchange between Mr. Brown and the defendant and Mr. Brown asked the defendant not to go in. The defendant replied that the governor's memorandum and Secretary Roberts' letter gave him authority to meet with the employees at the Boy's School, and that he was going into the cafeteria. Mr. Brown then advised the defendant, "If you do, then I am going to have to have you removed and take some action." The defendant responded, "You are doing what you have to do and I am doing what I have to do." The defendant then went into the cafeteria and Mr. Brown called the Okeechobee County sheriff's office. A deputy sheriff arrived shortly thereafter. Mr. Brown asked the deputy to speak to Mr. Huegel and ask him to leave the premises. He told the deputy that he did not want him in the cafeteria, that he wasn't an employee and that he was afraid that he might cause some disturbance. The deputy went up to Mr. Huegel in the cafeteria and asked if he would leave. Mr. Huegel said no and the deputy told him, "Mr. Brown wants you to leave and if you don't leave, then you will be arrested for trespassing." According to the deputy, Mr. Huegel claimed that he had a right to be there. He refused to leave and was then placed under arrest. At no time was there any violence or disorderly conduct. Both Mr. Brown and Mr. Huegel acted courteously, but each insisted upon what they considered to be their legal rights.

It also appears to have been common practice for staff members to have invited guests for lunch with them in the staff cafeteria. It was shown that Mr. Huegel had in fact been invited by a staff member to have lunch in the cafeteria. Mr. Hux testified that he was a classroom teacher at the Florida School for Boys at Okeechobee and president of the local American Federation of Teachers' union and that he had invited Mr. Huegel to the campus to meet with him and other staff members to discuss the governor's memorandum. The defendant was sitting at a table with Mr. Hux in the staff cafeteria at the time of his arrest.

There was also introduced into evidence at the trial, a copy of directive no. 50.06, from Emmett S. Roberts, as secretary of the Department of Health and Rehabilitative Services. The effective date of this directive was April 1, 1974, which was six days before the incident at the Boy's School which resulted in the defendant's arrest. This directive provides in part as follows —

"To comply with the policies of the Governor of the State of Florida regarding "Collective Bargaining by State Employees," memorandum of March 9, 1973, the following policies and procedures are established.

Public employees are authorized, by their constitutional rights, to engage in collective bargaining as provided by

Article I, Section 6, of the Florida Constitution. Public employees and non-employees are entitled to reasonable access to state property to solicit memberships in a labor organization, provided the solicitation takes place during non-working time in non-working areas and does not otherwise interfere with the work routine of the department and/or division."

This directive was not forwarded to Mr. Brown until April 13, 1973, by O. J. Keller, the then director of the Division of Youth Services.

Based upon the above facts, established by a consideration of the evidence and testimony in the light most favorable to the state's case, is there a legal basis to support the jury's verdict of guilty? It is the court's conclusion that there is not and that the conviction must be reversed. The defendant, under Article I, Section 6, of the Florida Constitution was entitled to reasonable access to the Boy's School for the purpose of soliciting union memberships from state employees. This right was recognized by the governor in his memorandum dated March 9, 1973, and by the secretary of the Department of Health and Rehabilitative Services in his memorandum issued March 21, 1973, and his directive effective April 1, 1973. The only limitation on the right of reasonable access to state property was that solicitation take place during non-working time in non-working areas and not otherwise interfere with the work routine of the state institution. Secretary Roberts, in his March 9, 1973, memorandum, included cafeterias within his definition of non-working areas where employees may meet with union representatives and recognized that the lunch period of employees was a non-working period.

It appears to the court that in this case the Florida Trespass Statute was used to thwart the defendant in the lawful exercise of his rights under Article I, Section 6, of the Florida Constitution and as such was an unconstitutional application of the statute. On April 6, 1973, when the defendant went to the Boy's School, he was denied reasonable access. No provision had been made which would allow him to meet with state employees. If the staff cafeteria at this institution was not an appropriate meeting place, an alternate meeting place should have been provided. There was no showing that the defendant's use of the cafeteria in any way interfered with the work routine of the school. There was no showing of any improper or disorderly conduct on the part of the defendant. The superintendent of the Boy's School simply took the position that the defendant had no right to be there and ordered him to leave. When the defendant failed to comply with his order, a deputy sheriff was called. At the direction of the superintendent, the defendant was arrested and removed from the Boy's School.

The court in this opinion does not want to appear overly critical of Superintendent Brown. He was placed in a very difficult situation. He had been made aware of the memorandums issued by the governor on March 9, 1973, and by Secretary Roberts on March 21, 1973, however these directives were not officially passed on to him by his superiors. When he sought guidance in Tallahassee, he was in effect given the run around and told to take "what action you think is appropriate." He was not advised of, nor was he sent a copy of, Secretary Roberts' directive no. 50.06 until April 13, 1973, although the effective date of the directive was April 1, 1973. Superintendent Brown was placed in the position where he had to make a decision based upon the information available to him at the time. The court is convinced that his decision was made in good faith and that he believed at the time he was acting in the best interest of the Boy's School. However, upon review it appears that he was wrong. The fault, if any, lies in the bureaucracy of the state which allowed a delay of thirty-five days from the time the governor first issued his memorandum on March 9, 1973, until April 13, 1973, when Secretary Roberts' directive no. 50.06 was finally mailed to Superintendent Brown. A statement of the policy by the governor has very little effect until it is communicated to the person who must carry out the policy.

For the reasons stated above, the conviction cannot stand. The defendant's adjudication of guilt and sentence in this case are set aside and the case is remanded to the county court of Okeechobee County, with instructions that the defendant be discharged.